<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **MONOSOL RX, LLC,** | : | **Civil Action No.: 10-5695 (FLW)** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **MEMORANDUM OPINION** |
| | : | **AND ORDER** |
| **BIODELIVERY SCIENCES** | : | |
| **INTERNATIONAL, INC., et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

<u>ARPERT, U.S.M.J</u>

**I.      INTRODUCTION**

This matter previously came before the Court on a motion by Defendants BioDelivery

Sciences International, Inc. ("BioDelivery") and Aveva Drug Delivery Systems, Inc. ("Aveva")

(collectively, "BA Defendants") to stay this matter pending the resolution of the U.S. Patent and

Trademark Office's ("USPTO") *inter partes* reexamination of the '588 patent [dkt. entry. no. 46].

That motion was returnable October 17, 2011.  Plaintiff MonoSol Rx, LLC ("Plaintiff") filed

opposition on October 4, 2011 and BA Defendants filed a reply brief on October 11, 2011.

During a telephone status conference on October 25, 2011, the Court denied BA Defendants'

motion without prejudice based upon the fact that the USPTO had not yet taken action on

Defendants' request for an *inter partes* reexamination of the '588 patent and that, in response to

Plaintiff's Second Amended Complaint which added allegations of infringement with respect to

the '292 patent and the '891 patent, BA Defendants expressed this intention to request *ex parte*

reexaminations of the '292 and '891 patents.  *See* dkt. entry no. 56.  Subsequently, during a

telephone status conference on January 5, 2012, based upon BA Defendants' representation that they had filed requests for *ex parte* reexaminations of the '292 and '891 patents and that the USPTO had granted their request for an *inter partes* reexamination of the '588 patent, the Court granted BA Defendants leave to renew their motion to stay this matter and hereby incorporates the arguments previously made by counsel with respect to the original motion to stay. Presently, this matter comes before the Court on a Motion by Defendants to stay this matter pending the resolution of the USPTO's *inter partes* reexamination of the '588 patent and *ex parte* reexaminations of the '292 and '891 patents [dkt. entry. no. 60], returnable February 21, 2012. Plaintiff filed opposition on February 6, 2012. BA Defendants filed a reply brief on February 14, 2012. Defendant Meda Pharmaceuticals Inc. ("Meda") joined  BA Defendants' Motion on February 21, 2012. *See* Meda's Letter dated February 21, 2012, dkt. entry no. 63. For the reasons stated herein, Defendants' Motion is **GRANTED**.

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On November 2, 2010, Plaintiff filed a Complaint against Defendants BioDelivery, Meda, and Aveva (collectively, "Defendants") alleging infringement of U.S. Patent No. 7,824,588 ("'588 patent") entitled "Method of Making Self-Supporting Therapeutic Active-Containing Film". *See* Pl.'s Comp., dkt. entry no. 1 at 1-3. Plaintiff asserts that Defendants "make, use, offer to sell, and/or sell certain pharmaceutical films under the Onsolis™ name [and that the] Onsolis™ film products are manufactured in a manner that infringes one or more claims of the '588 patent". *Id.* at 4. On January 14, 2011, Plaintiff filed an Amended Complaint which added an allegation of false marking of U.S. Patent No. 5,800,832 ("'832 patent") entitled "Bioerodable Film for Delivery of Pharmaceutical Compounds to Mucosal Surfaces". *See* Pl.'s Am. Comp.,

dkt. entry no. 5 at 4-9.  Plaintiff alleges that Defendants "have marked and continue to mark the Onsolis™ film products with the '832 patent" in an attempt to have "recipients of Onsolis™ film products believe that the Onsolis™ film products are covered by the '832 patent" when in fact they are not.  *Id.* at 4-5.  On September 27, 2011, Plaintiff filed a Second Amended Complaint which added allegations of infringement of U.S. Patent number 7,357,891 ("'891 patent") entitled "Process for Making an Ingestible Film" – which was assigned to Plaintiff on April 15, 2008 – and U.S. Patent number 7,425,292 ("'292 patent") entitled "Non-Self-Aggregating Uniform Heterogeneity and Drug Delivery Systems Made Therefore" – which was assigned to Plaintiff on September 16, 2008.  *See* Pl.'s Second Am. Comp., dkt. entry no. 48 at 2-10.  Plaintiff alleges that "Onsolis™ film products are manufactured in a manner that infringes one or more claims of the '292, '891 and '588 patents."  *Id.* at 4.

On September 12, 2011, BA Defendants filed a request for *inter partes* reexamination of the '588 patent with the USPTO asserting that "[e]ach of the claims of the '588 patent is demonstrated to be anticipated and/or obvious in view of eight prior art references, four of which were not...considered by the [Patent] Examiner during prosecution of the patent".  *See* Def.'s Br., dkt. entry no. 46-1 at 4-5.  On November 10, 2011, the USPTO issued its initial Office Action and granted BA Defendants' request for *inter partes* reexamination of claims 1-191 of the '588 patent.  *See* Def.'s Decl. of Scott S. Christie ("Christie"), dkt. entry no. 60-2 at Ex. B.  Similarly, on January 20, 2012, BA Defendants filed separate requests for *ex parte* reexaminations of the '292 and '891 patents.  *See* Def.'s Br., dkt. entry no. 60-1 at 3.  On February 16, 2012, the USPTO issued its initial Office Action and granted BA Defendants' request for *ex parte* reexamination of claims 1-22 of the '292 patent.  *See* BA Def.'s Letter dated February 17, 2012.

3

On March 1, 2012, the USPTO issued its initial Office Action and granted BA Defendants' request for *ex parte* reexamination of claims 1-9 of the '891 patent. *See* BA Def.'s Letter dated March 2, 2012.

## III.   ARGUMENT

### A.   Defendants' Arguments in Support of the Motion to Stay

#### 1.   A stay of this action is warranted pending the conclusion of the reexamination proceedings.

Defendants argue that "[t]he Court should immediately stay this suit pending resolution of the...reexamination requests". *See* Def.'s Br., dkt. entry no. 60-1 at 9. Citing *Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, 2007 U.S. Dist. LEXIS 73198, at *12 (D. Del. 2007), *Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F. 2d 58, 60 (3d Cir. 1985), *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988), *Sabert Corp. v. Waddington N. Am., Inc.*, 2007 U.S. Dist. LEXIS 68092, at *22 (D.N.J. 2007), *ASCII Corp. v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994), and *CIMA Labs, Inc. v. Actavis Group HF*, 2007 U.S. Dist. LEXIS 41516, at *25-26 (D.N.J. 2007), Defendants note that it is "well within the Court's discretion to stay judicial proceedings pending the conclusion of a reexamination of a patent" and contend that "[t]here is a liberal policy in favor of granting motions to stay proceedings pending the outcome of reexamination proceedings...especially when a lawsuit is in its initial stages and there has been little or no discovery". *Id.* at 9-10. Pursuant to *Stryker Trauma S.A. v. Synthes (USA)*, 2008 U.S. Dist. LEXIS 23955, at *4 (D.N.J. 2008), *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406-07 (W.D.N.Y. 1999), and *Vehicle IP, LLC v. Wal-Mart Stores, Inc.*, 2010 U.S. Dist. LEXIS 123493, at *2-3 (D. Del. 2010), Defendants maintain that courts consider the following factors "[t]o

4

determine whether a stay pending the resolution of a reexamination is appropriate": "(1) whether a stay will present undue prejudice to the patentee or a clear tactical disadvantage to the patent challenger; (2) whether a stay will simplify the issues and streamline trial; and (3) whether discovery is complete and a trial date has been set". *Id*. at 10-11. As set forth more fully below, Defendants argue that all of these factors weigh in favor of granting a stay. *Id*. at 11.

> (a)   **A stay will not unduly prejudice Plaintiff or provide a clear tactical advantage to Defendants.**

Citing *KLA-Tencor Corp. v. Nanometrics, Inc.*, 2006 U.S. Dist. LEXIS 15754, at *7 (N.D. Cal. 2006), Defendants contend that "[g]ranting a stay does not cause the nonmoving party undue prejudice when that party has not invested substantial expense and time in the litigation". *Id*. Further, citing *ASCII Corp v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994), *Eberle v. Harris*, 2005 U.S. Dist. LEXIS 31885, at *5 (D.N.J. 2005), *Motson v. Franklin Covey, Co.*, 2005 U.S. Dist. LEXIS 34067, at *9 (D.N.J. 2005), and *GPAC, Inc. v. Enterprises, Inc.*, 144 F.R.D. 60, 62-63 (D.N.J. 1992), although "[b]y definition...a stay will result in an initial delay of this matter", Defendants argue that "[d]elay alone...is not considered to be prejudicial for purposes of a motion to stay" and that "[c]ourts routinely grant motions to stay despite substantial delays that occur" based in part on "a liberal policy in favor of granting motions to stay pending the outcome of USPTO reexamination". *Id*. at 11-12. "None of the litigants will face...prejudice or disadvantage in this litigation as a result of a stay, and in fact, all of the litigants will benefit equally from cost-savings...[while] the Court will avoid unnecessary proceedings". *Id*.

Pursuant to *Brass Smith, LLC v. RPI Indus.*, 2010 U.S. Dist. LEXIS 116063 (D.N.J.

5

2010), *WABCO Holdings, Inc. v. Bendix Commer. Vehicle Sys.*, 2010 U.S. Dist. LEXIS 64036 (D.N.J. 2010), *CIMA Labs*, 2007 U.S. Dist. LEXIS 41516, at *31, *Sabert Corp.*, 2007 U.S. Dist. LEXIS 68092, at *23, *Gioello Enters. Ltd. v. Mattel, Inc.*, 2001 U.S. Dist. LEXIS 26158, at *4 (D. Del. 2001), and *Enhanced Sec. Research, LLC v. Juniper Networks, Inc.*, 2010 U.S. Dist. LEXIS 136503 (D. Del. 2010), Defendants claim that "[o]n more than one occasion, this Court has elected to stay patent infringement actions when the patents-in-suit were subject to reexamination before the [US]PTO" because "although the denial of a stay can have no effect whatsoever on past events, the grant of a stay will maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims". *Id.* at 12-13. Given that "[t]his case is in its early stages and there has been limited discovery, no claim construction proceedings, and no trial preparation", Defendants argue that "Plaintiff will not be unduly prejudiced" by a stay. *Id.* at 13; *see also Sabert Corp.*, 2007 U.S. Dist. LEXIS 68092, at *23; *Methode Elecs., Inc. v. Infineon Techs. Corp.*, 2000 U.S. Dist. LEXIS 20689, at *7 (N.D. Cal. 2000). "To the extent the reexaminations will present any delay", citing 35 U.S.C. § 305, *CIMA Labs*, 2007 U.S. Dist. LEXIS 41516, at *25, *Ethicon*, 849 F.2d at 1426, and *Stryker Trauma S.A.*, 2008 U.S. Dist. LEXIS 23955, at *6-7, Defendants maintain that "it will not be significant" given that "[p]atent examiners are obligated to conduct reexamination proceedings 'with special dispatch'" and given that "[t]he delay inherent in the reexamination process does not, by itself, constitute undue prejudice". *Id.*

In this instance, Defendants note that the USPTO has granted the request for *inter partes* reexamination as to the '588 patent and *ex parte* reexamination of the '292 and '891 patents, therein rejecting all claims of each patent as invalid. *Id.*; *see also* BA Def.'s Letter dated

February 17, 2012; BA Def.'s Letter dated March 2, 2012.  Citing *Sabert Corp.*, 2007 U.S. Dist. LEXIS 68092, at *18-19, *Methode Elecs.*, 2000 U.S. Dist. LEXIS 20689, at *7, and *KLA-Tencor*, 2006 U.S. Dist. LEXIS 15754, at *8, Defendants argue that "[a] stay at this stage of the case would not present any tactical advantage to...Defendants" given that Defendants "have not delayed in either seeking reexamination of the patents-in-suit or moving for a stay" and have not "sought a stay for a dilatory purpose".  *Id.*  Here, because Plaintiff "will not be prejudiced or disadvantaged in any way as a result of a stay" and because "the Court and the parties...will all clearly benefit from [a] stay", Defendants argue that this factor weighs in favor of granting a stay. *Id.* at 15.  However, "[e]ven if the Court were to find some prejudice or disadvantage to Plaintiff, the remaining two factors of the analysis...clearly favor a stay...and[,] therefore[,] a stay is [still] warranted".  *Id.*

<div align="center">

**(b)      A stay will simplify the issues and streamline trial.**

</div>

Defendants contend that "[a] stay would save resources and promote judicial economy". *Id.* at 15.  Noting that the USPTO "has already made an initial determination that all claims of the '588...[, '292, and '891] patent[s] are invalid", pursuant to 35 U.S.C. § 307(a) and *Broadcast Innovation, L.L.C. v. Charter Commc'n, Inc.*, 2006 U.S. Dist. LEXIS 46623, at *7 (D. Colo. 2006), "[s]hould the [USPTO] determine that the reexamined claims of the patents-in-suit are invalid", Defendants assert that "those claims would then be unenforceable in this lawsuit".  *Id.*; *see also* BA Def.'s Letter dated February 17, 2012; BA Def.'s Letter dated March 2, 2012.  "In 89% of *inter partes* reexaminations, where the request to reexamine is granted, the [USPTO] forces the patent owner to amend or cancel the claims".  *Id.*  Separately, "the [USPTO] grants 92% of all requests for *ex parte* reexamination...and in 89% of those cases the [USPTO] forces

the patent owner to amend or cancel claims". *Id*. at 15-16.  Thus, Defendants argue that "waiting

for the outcome of the reexaminations could eliminate entirely the need for a trial". *Id*. at 16.

Citing 35 U.S.C. § 307(a), *Middleton, Inc. v. Minn. Mining & Mfg. Co.*, 2004 U.S. Dist.

LEXIS 16812, at *13, 13 n.18 (S.D. Iowa 2004), and *GPAC, Inc. v. D.W.W. Enters., Inc.*, 144

F.R.D. 60, 63 (D.N.J. 1992), Defendants assert that "[i]n the event some patent claims emerge

from the reexaminations, this lawsuit will likely be simplified nonetheless because claims,

arguments, and defenses can be narrowed or entirely disposed of" and, thereby, "the resources of

the parties and the court" will be preserved if a stay is granted.  *Id*.  In fact, pursuant to *Canady v.*

*Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 68, 78 (D.D.C. 2002), "the very purpose behind

the [US]PTO reexamination procedure is to facilitate patent holders' enforcement of their patent

rights in the most economical manner possible".  *Id*. at 16-17.  Citing *Ethicon*, 849 F. 2d at 1428

and *CIMA Labs*, 2007 U.S. Dist. LEXIS 41516, at *26, Defendants argue that "regardless of

whether the [USPTO] determines that the reexamined claims are unpatentable or not, staying this

lawsuit until this determination is made will simplify the issues and streamline the eventual

trial".  *Id*. at 17.  Here, given that "staying this litigation...will result in the simplification, if not

the resolution, of the issues to be litigated in this case", Defendants argue that this factor weighs

in favor of granting a stay.  *Id*.

### (c)      The procedural posture of this case favors a stay.

Citing *Vehicle IP*, 2010 U.S. Dist. LEXIS 123493, at *4 and *Juniper*, 2010 U.S. Dist.

LEXIS 136503, at *6, Defendants maintain that the fact that this matter "has not advanced

significantly beyond the pleading stage" – specifically, there has only been "limited discovery, no

claim construction proceedings", and no trial date has been set – weighs in favor of a stay.  *Id*. at

18.  Citing *CIMA Labs*, 2007 U.S. Dist. LEXIS 41516, at *30-31, *GPAC, Inc. v. D.W.W. Enter., Inc.*, 144 F.R.D. 60, 64 (D.N.J. 1992), *Sabert Corp.*, 2007 U.S. Dist. LEXIS 68092, at *21, *KLA-Tencor*, 2006 U.S. Dist. LEXIS 15754, *Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*, 33 U.S.P.Q. 2d 2022, 2023 (N.D. Cal. 1995), and *ASCII Corp.*, 844 F. Supp. at 1381, Defendants note that "most often, cases have been denied a stay due to the late stage of the litigation, the fact that discovery was or would be almost completed, or the matter had been marked for trial".  *Id*. at 18-19.  Here, given that such circumstances are not present, Defendants argue that this factor weighs in favor of granting a stay.  *Id*.

        **B.**      **Plaintiff's Arguments in Opposition to the Motion**

              **1.**      **An initial rejection of claims of the '588 patent is not a significant event.**

Although Defendants "attribute substantial fanfare to the decision of the [USPTO] to begin reexamination of the '588 patent", Plaintiff maintains that this was not unexpected given that "95% of all requests for *in partes* reexamination...are granted".  *See* Pl.'s Opp'n Br., dkt. entry no. 61 at 5.  Plaintiff also contends that "[a] rejection of the claims...[of the '588 patent] is nothing more than standard operating procedure" given that "37 C.F.R. § 1.935 provides that 'the order for *inter partes* reexamination will usually be accompanied by the initial Office Action on the merits of the reexamination" such that if the USPTO "was not going to initially reject the patent claims, it would not even agree to reexamine the patent".  *Id*. at 6.  Similary, "[g]iven that the...[USPTO] orders *ex parte* reexamination for 92% of requests", Plaintiff maintains that "it [is] not...surprising...[that] request[s] for the ['292 and] '891 patent [were] granted" and notes that it is "standard procedure" for the "*ex parte* reexamination...[to] begin with an initial rejection

of the claims". *Id*.; *see also* 37 C.F.R. §§ 1.515(a), 1.530, 1.535; MPEP § 2261.

> **2.      The balance of factors weighs against staying this litigation.**

Citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936), Plaintiff notes that "[a]lthough the Court's inherent power to control its own docket includes the power to stay proceedings, the Court 'must weigh competing interests and maintain an even balance' in managing its docket" and "[t]he party moving for a stay 'must make out a clear case of hardship or inequity in being required to go forward...if there is even a fair possibility that the stay for which he prays will work to damage someone else". *Id*. at 7.  Citing *BarTex Research, LLC v. FedEx Corp.*, 611 F. Supp. 2d 647, 650 (E.D. Tex. 2009) and *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1427-28 (Fed. Cir. 1988), Plaintiff argues that "[t]here is no compelling need for a stay...given that...litigation and reexamination are not mutually exclusive alternatives for the parties to test the validity of a patent", given that "the results of reexamination will likely be appealed...[and will result] in further delay in reaching a final determination", and given that Defendants have "not made any showing of hardship or inequity" despite the fact that there is a "strong probability that a stay will harm [Plaintiff]". *Id*.  Citing *eCOMSYSTEMS, Inc. v. Shared Mktg. Sers., Inc.*, 2011 U.S. Dist. LEXIS 10174 (M.D. Fla. 2011) and *MercExchange, L.L.C. v. eBay, Inc.*, 500 F. Supp. 2d 556, 563 (E.D. Va. 2007), Plaintiff notes that "[a] district court 'is under no obligation to delay its own proceedings by yielding to ongoing...[USPTO] patent reexaminations, regardless of their relevancy to infringement claims which the court must analyze". *Id*. at 7-8.  Further, pursuant to *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005), "there is no *per se* rule requiring that patent cases be stayed pending reexamination because such a rule 'would invite parties to unilaterally derail' litigation". *Id*. at 8.

As set forth in *Wyeth v. Abbott Labs.*, 2011 WL 380902, at *2 (D.N.J. 2011), Plaintiff notes that courts "generally weigh three factors" when considering "whether to grant a stay pending reexamination": "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (2) whether discovery is complete and whether a trial date has been set". *Id*. "In evaluating the potential prejudice to the plaintiff if the stay is granted and the possible motivation of the defendant movant", pursuant to *PureChoice, Inc. v. Honeywell Int'l, Inc.*, 2007 WL 1189844, at *1 (E.D. Tex. 2007), Plaintiff maintains that "courts have also considered: (1) whether the defendant is a direct competitor of the plaintiff and (2) whether the request for reexamination was filed only after suit was filed suggesting that it may have been filed for the purposes of delay". *Id*. at 8-9. Plaintiff argues that "[t]hese factors favor a denial of...[Defendants'] Motion for a stay pending reexamination". *Id*. at 9.

### 3.        A stay of this litigation will greatly prejudice Plaintiff.

Based on the claim that Defendants are "actively ramping up their infringing activities", citing *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1345 (Fed. Cir. 2003) and *CVII Beta Ventures, Inc. v. Custom Optical Frames, Inc.*, 859 F. Supp. 945, 950 (D. Md. 1994), Plaintiff maintains that it "would be unduly prejudiced should a stay be granted" given that "[i]n the preliminary injunction context, courts have relied upon the threat of substantially increased infringing activities as evidence of irreparable harm". *Id*. In fact, if the Court grants Defendants' Motion to stay while Defendants increase their infringing activity, Plaintiff contends that it "will become in effect a 'compulsory licensor' and the essence of [its] patent rights will have been negated". *Id*. Plaintiff maintains that, as set forth in its brief and the Declaration of Timothy C.

11

Bickham ("Bickham"), it "continue[s] to compete head-to-head...[with Defendants] for projects and business in the film drug delivery sector" and "recent events...demonstrate that this is a case where a stay will harm [Plaintiff] more than just the inherent harm in delaying final resolution". *Id*. at 9-10; *see also* Pl.'s Decl. of Bickham, dkt. entry no. 61-1 at Exhs. L & M.

Plaintiff maintains that "the inherent harm by delay is substantial because the potential delay is for an indefinite period and the term of the patents-in-suit are limited".  *Id*. at 10. Indeed, Defendants' continued development of "products to introduce to the market that are offending and harmful to [Plaintiff's] market position" will continue "to negatively impact [Plaintiff's] business development activities".  *Id*.   Citing *Biax Corp. v. Fujitsu Comp. Sys. Corp.*, 2007 WL 614187, at *2 (E.D. Tex. 2007) and *PureChoice*, 2007 WL 1189844, at *1, Plaintiff argues that it "would be prejudiced by a stay because *ex parte* reexaminations take an average of 22.6 months to complete and the appellate process for review could take an additional 24 months" such that the "potential delay...is significantly longer than the timeframe parties face for resolution...through trial" in District Court.  *Id*. at 10-11.

### 4.      Defendants' reexamination requests are merely tactical delays.

#### (a)      Defendants' timing is transparent.

Plaintiff notes that Defendants filed their request "for *inter partes* reexamination of the '588 patent...on September 12, 2011", approximately 10 months after the Complaint was filed, and their request for *ex parte* reexaminations of the '891 and '292 patents on January 20, 2012, approximately 4 months after making the request for *inter partes* reexamination of the '588 patent and approximately 4 months after being put on notice that the '891 and '292 patents were also at issue in this litigation.  *Id*. at 11-12.  Plaintiff argues that Defendants' delays were "clearly

12

for tactical reasons" in order to observe "how the [USPTO] acted and how [Plaintiff] responded".

*Id*. at 12.   Specifically, Defendants "attacked the '588 patent with four primary references" –

Chen, Peh, Bernstein, and Hijaya.   *Id*.   However, because "Chen and Hijaya had already been

considered during patent prosecution[,] ...[the USPTO] refused to accept...arguments that

Bernstein or Hijaya was a primary basis for rejecting the '588 claims".   *Id*.   Plaintiff asserts that

"[w]ith [this] knowledge in hand, [Defendants] changed tactics when...[requesting reexamination

of] the '891 and '292 patents...[and] dropped any mention of Bernstein and Hijaya".   *Id*.   Thus,

"[b]ut for their delay", Plaintiff argues that Defendants "would not have known to omit Bernstein

and Hijaya when requesting reexamination of the '891 and '292 patents".   *Id*.

> **(b)      The "additional prior art" in the newly-filed reexamination
> requests is merely duplicative.**

Plaintiff contends that "[a]ll of the prior art that [Defendants] raised against the '891 and

'292 patents was in their possession well before their requests were filed" given that "[a]ll [of]

the references cited against the '891 and '292 patents were cited in the '588 request" with the

only exception being "U.S. Patent No. 4,365,423, to Arter et al. ("Arter")".   *Id*.   However,

Plaintiff maintains that Arter "is remarkably similar in content to U.S. Patent No. 5,881,476 to

Strobush et al. ("Strobush")", a patent which Defendants "used against the '588 patent".   *Id*. at

12-13.   Thus, given that "Arter is the only reference [Defendants] raise that the USPTO did not

already consider" in "its request for *ex parte* reexamination of the '891 patent", Plaintiff argues

that Defendants are "trying to pull the wool over the eyes of the USPTO and this Court" when

they assert that "the reexaminations are based upon 'new' art".   *Id*. at 13-14.   In fact, "Arter

provides little if any...[new] information" given that Strobush was "considered...during the

13

original prosecution".  *Id.*

        5.      **Staying this litigation will not simplify the issues or promote judicial efficiency.**

Despite Defendants' claim "that reexaminations are of great benefit to the Court because they will 'likely result in a narrowing and simplifying of the issues'", Plaintiff argues that "[r]eexamination would only significantly simplify this case if the [USPTO] finds that all claims of the...patents-in-suit are cancelled".  *Id.* at 14.  Given that "this happens in only 12% of reexaminations requested by a third party", Plaintiff maintains that "[t]he unlikelihood of such a result favors not staying [this] case".  *Id.*  "[I]f the Court were to adopt a rule that patent cases should be stayed during reexamination because some of the claims may be affected", Plaintiff argues that "such a rule would not promote the efficient and timely resolution of patent cases...but[,] rather[,] would invite parties such as [Defendants] unilaterally to derail timely patent case resolution by seeking reexamination".  *Id.*  Citing *Soverain*, 356 F. Supp. at 662-63, although acknowledging that "some of the claims in the case may change due to reexamination", Plaintiff maintains that "the interests of justice will be better served by dealing with that contingency when and if it occurs...rather than putting...[this] case indefinitely on hold" because "[f]irm trial settings resolve cases and reduce litigation costs".  *Id.* at 14-15.

Noting that "[r]eexamination is limited to a narrow set of issues" including "whether the patent claims are anticipated or obvious in view of patents or printed publications" pursuant to 35 U.S.C. §§ 301, 311(a), Plaintiff argues that "[t]he reexamination process is not a substitute for a District Court proceeding" given the "other issues that are commonly raised in a patent infringement action...[that] must still be decided by...[a] District Court" such as "infringement of

14

the patents-in-suit", "invalidity based on prior art other than patents or printed publication", "invalidity based on failure to satisfy the enablement, written description, definiteness or best mode requirements...[pursuant to] 35 U.S.C. § 112", "unenforceability", "monetary damages", or "whether injunctive relief should be awarded". *Id*. at 15.  In this instance, Plaintiff contends that the USPTO "will not resolve [Plaintiff's] claims that the manufacture and sale of Onsolis infringe the '588, '292 and '891 patents", "will not calculate the monetary damages that [Plaintiff] should be awarded...or determine [Plaintiff's] right to injunctive relief", will not "resolve many of the invalidity defenses raised in [Defendants'] invalidity contentions", and "will not resolve [Plaintiff's] false marking claim". *Id*. at 16.

<p style="text-align:center">6.      The posture of this case does not mandate a stay.</p>

Plaintiff notes that "[s]ubstantial time and resources have been committed to this litigation" given that the parties "have exchanged initial disclosures, infringement contentions, responses to infringement contentions, invalidity contentions, and responses to invalidity contentions". *Id*.  Given the progress already made in this matter, Plaintiff contends that a stay is not warranted.

**III.    DISCUSSION**

<p style="margin-left:2em">**A.     Legal Standards**</p>

<p style="margin-left:4em">**1.     Stay Proceedings**</p>

It is well-settled that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v.*

<p style="text-align:center">15</p>

*North American Co.*, 299 U.S. 248, 254-55 (1936)(*citing Kansas City Southern Ry. Co. v. U.S.*, 282 U.S. 760, 763 (1931); *Enelow v. New York Life Ins. Co.*, 293 U.S. 379, 382 (1935)). "Especially in cases of extraordinary public moment, the individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." *Id*. at 256.  Specifically, "a United States district court has broad power to stay proceedings." *Bechtel Corp. v. Laborers' International Union*, 544 F.2d 1207, 1215 (3d. Cir. 1976).  "In the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." *Id*.; *see also American Life Ins. Co. v. Stewart*, 300 U.S. 203, 215 (1937).  However, "it is well settled that before a stay may be issued, the petitioner must demonstrate 'a clear case of hardship or inequity', if there is 'even a fair possibility' that the stay would work damage on another party."  *Gold v. Johns-Mansville Sales Corp.*, 723 F.2d 1068, 1075-76 (3d Cir. 1983)(*citing Landis v. North American Co.*, 299 U.S. 248, 255 (1936)).

With respect to patent cases, courts have "consistently recognized the inherent power of the district courts to grant a stay pending reexamination of a patent".  *P&G v. Kraft Foods Global, Inc.*, 549 F.3d 842, 849 (Fed. Cir. 2008); *see also Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir.), *cert. denied*, 464 U.S. 935 (1983); *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426 (Fed. Cir. 1988).  However, "a stay should ordinarily not be granted unless there is a substantial patentability issue raised" and "both a preliminary injunction and a stay ordinarily should not be granted at the same time" because this "could subject an accused infringer to unfair and undesirable delay in reaching a final resolution".  *P&G*, 549 F.3d at 849; *see also Amazon.com v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350-51 (Fed. Cir. 2001).

16

"A district court is not required to stay a proceeding pending reexamination", although "one purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is cancelled) or to facilitate trial of that issue by providing the district court with the expert view of the [US]PTO (when a claim survives reexamination proceedings)". *Cross Atl. Capital Partners., Inc. v. Facebook, Inc.*, 2008 U.S. Dist. LEXIS 62869, at *2 (E.D. Pa. 2008); *see also Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001). "[G]ranting a stay is favored" and is "particularly appropriate when the reexamination result might assist the court in making a validity determination or would eliminate the need to make an infringement determination". *Id.* at *2-3; *see also Alltech, Inc. v. Cenzone Tech, Inc.*, 2007 U.S. Dist. LEXIS 19989 (S.D. Cal. 2007); *ASCII Corp v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994); *In re Cygnus Telecomm. Tech., LLC Patent Litig.*, 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005). In fact, "[a]lthough every case is fact specific, almost every reported New Jersey District Court opinion that has considered the issue has granted a stay where a reexamination request was pending". *Brass Smith, LLC v. RPI Indus.*, 2010 U.S. Dist. LEXIS 116063, at *19-20 (D.N.J. 2010).

However, the Court recognizes that "litigation and reexamination are not mutually exclusive alternatives for the parties to test the validity of a patent – they may be concurrent proceedings". *BarTex Research v. FedEx Corp.*, 611 F. Supp. 2d 647, 650 (E.D. Tex. 2009); *see also Ethicon*, 849 F.2d 1422, 1427-28. District courts are "under no obligation to delay [their] own proceedings by yielding to ongoing [US]PTO patent reexaminations, regardless of their relevancy to infringement claims which the court must analyze". *MercExchange, L.L.C. v. eBay, Inc.*, 500 F. Supp. 2d 556, 563 (E.D. Va. 2007). Adoption of a "*per se* rule that patent cases

should be stayed during reexamination...would not promote the efficient and timely resolution of

patent cases, but would invite parties to unilaterally derail timely patent case resolution by

seeking reexamination".  *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 663

(E.D. Tex. 2005).

       "Courts have enumerated many advantages with respect to staying a civil action pending

[US]PTO reexamination of a patent, which include: (1) a review of all prior art presented to a

court by the [US]PTO, with its particular expertise; (2) the potential alleviation of numerous

discovery problems relating to prior art by [US]PTO examination; (3) the potential dismissal of a

civil action should invalidity of a patent be found by the [US]PTO; (4) encouragement to settle

based upon the outcome of the [US]PTO reexamination; (5) an admissible record at trial from the

[US]PTO proceedings which would reduce the complexity of the litigation; (6) a reduction of

issues, defenses and evidence during pre-trial conferences; and (7) a reduction of costs for the

parties and a court".  *ICI Uniqema, Inc. v. Kobo Prods., Inc.*, 2009 U.S. Dist. LEXIS 108421, at

*3 (D.N.J. 2009); *see also Eberle v. Harris*, 2005 U.S. Dist. LEXIS 31885 (D.N.J. 2005); *GPAC,

Inc. v. D.W.W. Enterprises, Inc.*, 144 F.R.D. 60, 63 (D.N.J. 1992).   In this case, all parties

acknowledge that the following factors should be considered to determine whether a stay is

appropriate: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage

to the nonmoving party; (2) whether a stay will simplify the issues in question and trial of the

case; and (3) whether discovery is complete and whether a trial date has been set".  *Cross Atl.*,

2008 U.S. Dist. LEXIS 62869, at *3-4; *see also In re Laughlin Prods. Inc.*, 265 F. Supp. 2d 525,

530-31 (E.D. Pa. 2003); *Sabert Corp. v. Waddington North Am., Inc.*, 2007 U.S. Dist. LEXIS

68092 (D.N.J. 2007); *Alltech*, 2007 U.S. Dist. LEXIS 19989; *Cygnus*, 385 F. Supp. 2d at 1023;

18

*Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999); *ASCII*, 844 F. Supp. at 1380; *GPAC*, 144 F.R.D. at 66; *ICI Uniqema*, 2009 U.S. Dist. LEXIS 108421, at *4.

**B.    Defendants' Motion**

Here, given that the USPTO has now granted Defendants' separate requests for *inter partes* reexamination of the '588 patent and *ex parte* reexamination of the '292 and '891 patents, the Court finds that advancing this litigation while these reexaminations are pending may be an exercise in futility.  If claims 1-191 of the '588 patent, 1-22 of the '292 patent, and/or claims 1-9 of the '891 patent are invalidated, significant aspects of this lawsuit may be rendered moot and some or all of Plaintiff's claims may be dismissed.  Further, with respect to the factors used to determine the appropriateness of a stay, the Court finds that they also weigh in Defendants' favor.  While the Court appreciates that a stay will necessarily delay these proceedings, delay alone is not a sufficient reason to deny a stay.  *See Stryker Trauma S.A. v. Synthes*, 2008 U.S. Dist. LEXIS 23955 (D.N.J. 2008); *see also Sorensen v. Black and Decker Corp.*, 2007 U.S. Dist. LEXIS 66712 (S.D. Cal. 2007).  Similarly, while the Court appreciates Plaintiff's contention that Defendants are competitors that may continue selling infringing goods and eroding its market share and goodwill during a stay, Plaintiff did not seek a preliminary injunction in this matter and the Court declines to impose any restraints with respect to Defendants' business activities at this time.  *See WABCO Holdings, Inc. v. Bendix Commer. Vehicle Sys.*, 2010 U.S. Dist. LEXIS 64036, at *8-9 (D.N.J. 2010).  Importantly, the Court notes that all of Plaintiff's legal and equitable remedies will be available when the stay is lifted; a stay does not foreclose Plaintiff from any remedy.  Given that this case is still in the early stages of discovery, a *Markman* hearing has not been scheduled, and no trial date has been set, the initial decision of the USPTO rejecting

19

claims 1-191 of the '588 patent, 1-22 of the '292 patent, and 1-9 of the '891 patent, and the factors cited with respect to the advantages of granting a stay while the USPTO conducts the reexaminations (*see ICI Uniqema*, 2009 U.S. Dist. LEXIS 108421, at *3), the Court also finds that a stay may ultimately simplify the issues in question and the trial of this case.  As set forth in *Sorensen*, 2007 U.S. Dist. LEXIS 66712, at *18-19, if the USPTO does not invalidate or otherwise alter the claims of the '588, '292, and/or '891 patents, Plaintiff's legal remedies remain unaffected.  Moreover, if the claims are narrowed, the parties will have benefitted by avoiding a needless waste of their resources in this litigation and Plaintiff will be able to pursue its claim for monetary damages at trial.

Finally, this Cout is aware that "the Federal Circuit has recently confirmed that the [US]PTO would not be bound in its reexamination by the determinations of [a district court]".  *Sorensen*, 2007 U.S. Dist. LEXIS 66712, at *15.  Therefore,

> not only is plaintiff unlikely to be prejudiced in these proceedings by a stay pending the [US]PTO reexamination, but defendants would potentially be prejudiced by failing to enter a stay... .  Not only could the court and the [US]PTO reach conflicting determinations, but one possible scenario could result in irreparable harm to defendant: if this court finds that the patent is not invalid and the defendant has infringed it, and orders defendant to pay damages to plaintiff for such infringement, then defendant would have no ability to recover those damages if at a later date the [US]PTO determined that the patent is invalid.

*Id.*; *see also Bausch & Lomb, Inc. v. Alcon Lab.*, Inc., 914 F. Supp. 951, 952 (W.D.N.Y. 1996).  At the same time, a USPTO decision will be beneficial to the Court by either declaring the '588, '292, and/or /891 patents "unpatentable...[and thereby] eliminating the need for...[a] trial" or by finding the "claims to be valid...[and thereby] aid[ing] the Court when considering the claims during litigation".  *Id.*; *see also GPAC*, 144 F.R.D. at 65-66; *Gould*, 705 F.2d at 1342.

## IV.    CONCLUSION AND ORDER

The Court having considered the papers submitted and opposition thereto, and for the reasons set forth above;

**IT IS** on this 7th day of March, 2012,

**ORDERED** that Defendants' Motion to stay this matter pending the resolution of the USPTO's *inter partes* reexamination of the '588 patent and *ex parte* reexamination of the '292 and '891 patents [dkt. entry. no. 60] is **GRANTED**; and it is further

**ORDERED** that defense counsel shall provide the Court with status updates regarding the USPTO's *inter partes* reexamination of the '588 patent and/or *ex parte* reexaminations of the '292 and '891 patents every ninety (90) days starting **May 1, 2012**; and it is further

**ORDERED** that defense counsel shall notify the Court within ten (10) days of any disposition of the USPTO's *inter partes* reexamination of the '588 patent and/or *ex parte* reexaminations of the '292 and '891 patents; and it is further

**ORDERED** that the Clerk of the Court shall administratively terminate this case.

*s/ Douglas E. Arpert*
**DOUGLAS E. ARPERT**
**UNITED STATES MAGISTRATE JUDGE**